UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREWS ACHEAMPONG,

     Plaintiff,

vs.                                                                    Case No. 12-13223

BANK OF NEW YORK MELLON AS                    HON. AVERN COHN
TRUSTEE FOR THE CERTIFICATE
HOLDERS OF CWABS, INC. ASSET
BACKED CERTIFICATES 2006-6,
BANK OF AMERICA, and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.,

     Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING
<u>DEFENDANTS' MOTION TO DISMISS (Doc. 8)</u>**[1]

**I.  INTRODUCTION**

     This is another one of many cases pending in this district involving a default on a

mortgage.  Plaintiff Andrews Acheampong (plaintiff) is suing defendants Bank of New

York Mellon (BNYM), Bank of America, and Mortgage Electronic Registration Systems,

Inc. (MERS) (collectively, defendants).   The complaint asserts the following claims,

phrased by plaintiff as follows:

     (I)     Lack of Standing to Foreclose Under MCL 600.3204;

     (II)    Defendants Have Perpetrated a Fraud Upon the Oakland County Circuit
             Court by Attempting to Wrongfully Obtain a Judgment in Violation of MCL
             600.2907A;

---

[1] Although originally scheduled for hearing, the Court deems this matter appropriate for
decision without oral argument.  <u>See</u> Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

(III)    Quiet Title: MCL 600.605 and MCL 600.2932;

(IV)    In Violation of MCL 600.3205c(1) and MCL 600.3205c(3);

(V)    Breach of Contract as to Bank of New York Mellon; and

(VI)    Breach of Contract as to Bank of America.

Now before the Court is defendants' motion to dismiss (Doc. 8).  For the reasons that follow, the motion will be granted.

## II.  BACKGROUND

### A. The Property

This case involves residential real property located at 10707 North Oak Drive, Ferndale, Michigan.  On March 9, 2006, plaintiff received a loan from Countrywide Home Loans, Inc. (Countrywide) in the amount of $112,500.00.  Plaintiff executed a promissory note, and to secure repayment of the loan, granted MERS[2] a mortgage on the property.  The mortgage was recorded on March 20, 2006, Liber 37275, Page 158, Oakland County Register of Deeds.  The mortgage loan was an adjustable rate mortgage with a maximum interest of 15.875 percent.

On May 30, 2011, MERS assigned its interest in the mortgage to BNYM as Trustee for the Certificate Holders of CWABS, Inc. Asset Backed Certificates 2006-6 (Trust).  The MERS -- BNYM assignment was recorded on June 13, 2011, Liber 43131,

---

[2] MERS is a "national electronic registry system that tracks the changes in servicing rights and beneficial ownership interest in mortgage loans that are registered on the registry."  See About Us, http://www.mersinc.org/about-us/about-us.  "MERS acts as mortgagee in the county land records for the lender and servicer.  Any loan – where MERS is the mortgagee – registered on the MERS System is inoculated against future assignments because MERS remains the mortgagee no matter how many times servicing is traded."  Id.

2

Page 158, Oakland County Register of Deeds.

## B. The Trial Plan Loan Modification

Plaintiff defaulted on the loan by failing to make the required payments.  At the time plaintiff defaulted on the loan, his monthly payments were $1,260.79.  In 2009, plaintiff contacted BAC Home Loans Servicing, LP (BAC) for loan modification assistance.  In September of 2009, BAC placed plaintiff on a loan modification trial-plan.  The trial-plan required plaintiff to make payments in the amount of $997.17 on or before September 1, October 1, and November 1 of 2009.  The loan modification trial-plan provided that, if plaintiff made the three trial payments, BAC would provide a permanent loan modification plan.  The trial-plan agreement was not signed by either party.

Plaintiff says he made five payments under the trial-plan before BAC stopped accepting his payments.  The record reflects, however, that the first payment was not timely.  The first payment of $997.17 was made on October 2, 2009 (Doc. 1-2, p. 45).  Plaintiff was never given a permanent modification.

In April of 2010, BAC sent plaintiff a letter informing him that he did not make his required trial payments.  Plaintiff contacted BAC multiple times claiming to have made each of his trial payments.[3]

On June 20, 2011, plaintiff received a letter from Trott & Trott, P.C. (Trott) formally requesting that plaintiff engage in loss mitigation alternatives pursuant to MCL 600.3205, including an in-person meeting to work out a modification of the loan.  Plaintiff provided Trott with updated financial information.   Apparently, an in-person

_____

[3] At some point in time, Bank of America acquired BAC, and BAC became a subsidiary of Bank of America.

meeting never took place.

On November 1, 2011, Bank of America, as representative of BNYM, provided plaintiff with a loan modification application and scheduled an in-person interview to discuss the modification.   On November 4, 2011, plaintiff provided Bank of America with financial information.  Again, an in-person meeting never took place.

### C.  The Foreclosure Proceedings

Meanwhile, foreclosure proceedings were in the works.[4]  On November 29, 2011, BNYM purchased the property at a sheriff's sale for $152,257.31 and obtained a sheriff's deed which was recorded on December 6, 2011, Liber 43633, Page 799, Oakland County Register of Deeds.

Plaintiff failed to redeem the property.  On May 19, 2012, plaintiff's statutory right to redeem the property expired.

On June 4, 2012, plaintiff brought suit in state court.  Defendants timely removed the case to federal court.

On June 26, 2012, after this lawsuit was filed, BNYM filed an eviction action in Oakland County 45-B District Court.  See Bank of New York Mellon v. Joye A. Franklin-Acheampong, No. 12-01805-LT.

### III.  LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.   To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the

---

[4]  Plaintiff says he was unaware that defendants were pursuing foreclosure by advertisement proceedings.  The Sheriff's Deed, however, details the notice that was given to plaintiff during the proceedings.

assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies which are appended to the motion. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). Here, the Court has considered documents relating to the mortgage and the foreclosure which are referenced in the complaint and central to plaintiffs' claims.

**IV. ANALYSIS**

5

## A.  Standing to Challenge Assignment of Mortgage

### 1.

Defendants first argue that counts I, II, and III should be dismissed because plaintiff lacks standing to challenge the legal effect of the assignment of the mortgage from MERS to BNYM as trustee for the Trust.  The Court agrees.

Plaintiffs' claims all rely on the same assertion: BNYM, as trustee for the Trust, did not have standing to foreclose on the property because MERS's assignment of the mortgage to BNYM came five years after the Trust closed.  The Trust closed on March 29, 2006 and MERS assigned the mortgage on May 30, 2011.  Plaintiff says that, because the Trust was closed, the assignment was effectively a legal nullity, and that the foreclosure should be voided ab initio.

The Michigan Supreme Court has made clear that, under Michigan law, a mortgage granted to MERS as nominee for lender and lender's successors and assigns is a valid and assignable mortgage.  Residential Funding Co., LLC v. Saurman, 805 N.W.2d 183 (Mich. 2011); see also Matthews v. Mortgage Electronic Registration Sys. Inc., No. 10-13740, 2011 WL 2560329 (E.D. Mich. April 5, 2011).  Saurman made clear that MERS can assign a mortgage.

Moreover, plaintiff lacks standing to challenge the assignment of the mortgage from MERS to BNYM as trustee of the Trust.  As explained in Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC,[5]

---

[5] Plaintiff's response brief misconstrues defendants' argument and reliance on Livonia Properties.  Defendants have argued that plaintiff lacks standing to challenge the assignment of the mortgage from MERS to BNYM; they have not argued that plaintiff lacks standing altogether.

6

As a preliminary matter, [plaintiff] has presented no authority for the proposition that the record chain of title is destroyed by an irregularity affecting the validity of a transfer. Even if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed.

Regardless of this point, even if there were a flaw in the assignment, [plaintiff] does not have standing to raise that flaw to challenge [defendant]'s chain of title. As recognized by the district court, there is ample authority to support the proposition that "a litigant who is not a party to an assignment lacks standing to challenge that assignment."

. . . .

Michigan case law provides further support for the district court's conclusion that [plaintiff] lacks standing to challenge the assignment. . . .

399 F. App'x 97, 102 (6th Cir. 2010) (internal citations omitted).[6]  Further, the Sixth Circuit reasoned that, "[a]ny claim by [plaintiff] that [defendant] or the Trust before it was not a valid assignee of the mortgage rings hollow, as [plaintiff] made mortgage payments directly to the Trust for years without questioning the Trust's right to receive payment." Id. at 103.

In the mortgage instrument plaintiff granted MERS a mortgage on the property and expressly agreed that:

MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property. . . .

---

[6] Livonia Properties recognized an exception that gives plaintiff standing to challenge an assignment where the plaintiff can show that he might be subject to double liability on his debt. 399 F. App'x at 102. That is not the case here. Plaintiff does not have a genuine claim that he might be subject to double liability on the debt.

The mortgage was recorded.  MERS assigned the mortgage to BNYM on behalf of the Trust and the assignment was likewise recorded.

This case is not any different than <u>Livonia Properties</u>.  After giving MERS the right to assign the mortgage, plaintiff cannot now contend that MERS did not have the right to assign it.  <u>See Corgan v Deutsche Bank Nat'l Trust Co</u>, No. 1:09-cv-939, 2010 WL 2854421, at *3 (W.D. Mich. July 20, 2010); <u>Hilmon v Mortgage Electronic Registration Systems, Inc</u>, No. 06-13055, 2007 WL 1218718 (E.D. Mich. April 23, 2007).

**2.**

Following foreclosure, the rights and obligations of the parties are governed by statute.  <u>Senters v. Ottawa Sav. Bank, FSB</u>, 443 Mich. 45, 50-53 (1993).  Upon expiration of the statutory redemption period, the purchaser of a sheriff's deed is vested with "all the right, title, and interest" in the property.  <u>See</u> M.C.L. § 600.3236; <u>Piotrowski v. State Land Office Bd.</u>, 302 Mich. 179, 187 (1942).

Here, BNYM purchased the property at a foreclosure sale on November 29, 2011.  Plaintiff's right to redeem expired on May 19, 2012.  Because plaintiff failed to redeem the property before the redemption period expired BNYM became vested with "all the right, title, and interest" in the property.

Generally, once the redemption period has expired, all of the mortgagor's rights to the property are extinguished as a matter of law.  <u>Williams v. Pledged Prop. II, LLC</u>, No. 12-1056, 2012 WL 6200270, at *2 (6th Cir. Dec. 13, 2012) (<u>citing</u> Mich. Comp. Laws § 600.3236; <u>Piotrowski v. State Land Office Bd.</u>, 302 Mich. 179 (1942)).  Under Michigan law, "[a]fter the expiration of the redemption period, a mortgagor does not have standing to bring an action to quiet title or challenge the foreclosure proceedings."

8

Id. (citations omitted).

Notwithstanding the above, "Michigan courts allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in order to keep a plaintiff's suit viable, provided he makes a clear showing of fraud, or irregularity by the defendant." El-Seblani v. IndyMac Mortg. Servs., ___ F. App'x. ___ (6th Cir. 2013) (citing Schulthies v. Barron, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)); Freeman v. Wozniak, 617 N.W.2d 46, 49 (Mich. Ct. App. 2000) (internal quotation marks omitted)); see also Houston v. U.S. Bank Home Mortg. Wisconsin Serv., No. 11-2444, 2012 WL 5869918, at *5 (6th Cir. Nov. 20, 2012) ("Because she is outside of the redemption period, [plaintiff] can undo the divestment of her property right only if there was fraud, accident, or mistake.").  The standard for showing fraud, accident, or mistake is "stringent" and a statutory foreclosure "will only be set aside if very good reasons exist for doing so."  Id. (citing Kubicki v. Mortg. Elec. Reg. Sys., 807 N.W.2d 433, 434 (Mich. Ct. App. 2011); Sweet Air Inv., Inc. v. Kenney, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) (internal quotation marks omitted)).

As explained above, plaintiff has not alleged a strong showing of fraud or irregularity sufficient to unwind the sheriff's sale and allow an equitable extension of the period to redeem.  His challenge to the assignment of the mortgage has no merit. Therefore, counts I, II, and III will be dismissed.

## B. Breach of Contract – BNYM

Count V alleges that BNYM breached the mortgage contract by transferring the mortgage and the note separately.  This Court has previously rejected an attempt to

assert a claim based upon the securitization of a mortgage loan.   See Leone v. Citigroup, Inc., No. 12-10597, 2012 WL 1564698, at *4 (E.D. Mich. May 2, 2012) (collecting cases).   Further, as defendants correctly note, MERS acts as nominee for both the originating lender and its successors and assigns.   Therefore, the mortgage and note are not split when the note is sold.   See, e.g., Golliday v. Chase Home Fin., LLC, No. 1:10-cv-532, 2011 WL 4352554, at *8-9 (W.D. Mich. Aug. 23, 2011) (collecting cases).   Accordingly, count V will be dismissed.

## C.  Loan Modification – Michigan Statute

Count IV alleges that defendants violated Michigan law by conducting a foreclosure without meeting, in person, with plaintiff to discuss a loan modification for which he says he was qualified to receive.   Defendants say that, because plaintiff did not redeem the property, he lacks standing to assert this claim.   Because of an apparent conflict between recent Sixth Circuit and Michigan case law, the Court ordered the parties to provide supplemental briefs addressing this claim.   A detailed discussion of the issue follows.

The Court begins its discussion with Davenport v. HSBC Bank USA, 275 Mich. App. 344 (2007).  In Davenport, defendant bank foreclosed on plaintiff's residence and submitted the highest bid for the property at a sheriff's sale.  Id. at 345.  Plaintiff brought suit seeking to void and enjoin the foreclosure proceedings on the ground that defendant's first notice was published "several days before it actually acquired its interest in the indebtedness."  Id.  The Michigan Court of Appeals held that defendant's violation of MCL 600.3204(1)(d), which requires "[t]he party foreclosing the mortgage [to be] either the owner of the indebtedness or of an interest in the indebtedness. . . , was a

10

structural defect that rendered the foreclosure proceedings void <u>ab initio</u>.  <u>Id.</u> at 347-48 ("Because defendant lacked the statutory authority to foreclose, the foreclosure proceedings were void <u>ab initio</u>.").  Conversely, the court of appeals recognized that "a defect in fulfilling the statutory notice requirements attendant to a foreclosure by advertisement renders the resulting sale voidable rather than absolutely void."  <u>Id.</u> at 347 (citing <u>Jackson Inv. Corp. v. Pittsfield Prods., Inc.</u>, 162 Mich. App. 750, 755-56 (1987)).

More recently, and contrary to <u>Davenport</u>, the Sixth Circuit decided <u>Smith v. Bank of Am. Corp.</u>, 485 F. App'x 749 (6th Cir. 2012).  In <u>Smith</u>, plaintiffs began experiencing financial difficulties and initiated discussions with the defendant bank to modify an existing mortgage loan.  <u>Id.</u> at 751.  Plaintiffs claimed the bank assured them they would not lose their home.  <u>Id.</u>  However, plaintiffs said the bank proceeded with foreclosure without notifying them.  <u>Id.</u>  The bank ultimately obtained the property at a sheriff's sale and the redemption period expired.  <u>Id.</u>  Plaintiffs filed a lawsuit claiming, among other things, a violation of MCL 600.3205c based on the bank's failure to modify their mortgage loan.  <u>Id.</u> at 756.  Specifically, plaintiffs argued that the bank "failed to complete the loan modification process in accord with the statute, denied the [plaintiffs] a loan modification, and failed to provide [the plaintiffs] a copy of any calculations the [b]ank made and a copy of the program."  <u>Id.</u> (internal quotations omitted).  The Sixth Circuit rejected plaintiffs' claim because they did not allege facts sufficient to trigger a violation of MCL 600.3205c.  <u>Id.</u>  Notwithstanding, the Sixth Circuit reasoned that plaintiffs "appear to have missed the boat regarding the applicability of this statute which, when triggered, allows plaintiffs to enjoin a foreclosure by advertisement and

11

convert it to a judicial foreclosure: they brought this action after the foreclosure sale occurred, and so there is no foreclosure to enjoin or convert." Id. (citing Mich. Comp. Laws § 600.3205c).

Smith is consistent with the opinions of courts in this district that have considered the issue. See, e.g., Benford v. CitiMortgage, Inc., No. 11-12200, 2011 WL 5525942, at *5 (E.D. Mich. Nov. 14, 2011) ("The statute plainly requires the borrower to seek his remedy prior to the completion of the foreclosure sale, as it merely converts the proceeding into one of judicial foreclosure.  A borrower may not challenge a completed foreclosure sale under this statute."); Evan v. BAC Home Loan Servicing LP, No. 12-12066, 2012 WL 4867753, at *2 (E.D. Mich. Oct. 15, 2012) ("Failure to comply with Mich. Comp. Laws. § 600.3205(a) does not invalidate a Sheriff's Sale."); Smith v. Fannie Mae, No. 11-15560, 2012 WL 3758087, at *6 (E.D. Mich. Aug. 30, 2012) ("Under 600.3205(c)(1)-(3), [plaintiff] was required to act before the foreclosure by Sheriff's Sale commenced in order to convert the proceedings to a judicial foreclosure."); Dingman v. OneWest Bank, FSB, 859 F. Supp. 2d 912, 922 (E.D. Mich. 2012) ("[A] failure to comply with these statutes would not invalidate a Sheriff's sale.  The statutes include a specific enforcement mechanism that provides the borrowers with an opportunity to request judicial foreclosure if the foreclosing party does not comply with the loan modification provisions.") (citation omitted).

After Smith, the Sixth Circuit decided Mitan v. Fed. Home Loan Mortg. Corp., ___ F.3d ___, 2012 WL 6200257 (6th Cir. 2012).  In Mitan, the defendant bank foreclosed by advertisement on the home of Keith Mitan, who later died and was represented by plaintiff, his personal representative.  Id. at *1.  Plaintiff argued that "the property at

issue was foreclosed without statutory authority and thus the foreclosure was void <u>ab initio</u>." <u>Id.</u> (citing <u>Davenport</u>, 739 N.W.2d at 385).

The Sixth Circuit began its opinion by explaining the circumstances in which a lender may properly foreclose by advertisement:

> When a lender wishes to foreclose by advertisement on a borrower's principal residence, it must provide the borrower with a notice designating a person whom the borrower may contact to negotiate a loan modification. Mich. Comp. Laws § 600.3205a(1). If the borrower requests negotiation within the prescribed time period, the lender's designated person may request from the borrower certain documents. <u>Id.</u> § 600.3205b(2). If negotiations fail, the designated person is still required to apply statutory calculations to determine whether the borrower qualifies for a loan modification. <u>Id.</u> § 600.3205c(1). If the borrower qualifies, the lender may not foreclose by advertisement unless the designated person offers the borrower a loan-modification agreement that the borrower fails to return within fourteen days of receipt. <u>Id.</u> §§ 600.3205c(6)-(7). When the lender does not adhere to these provisions, the law provides the borrower a cause of action to convert the foreclosure by advertisement to a judicial foreclosure. <u>Id.</u> § 600.3205c(8). The law also affirmatively prohibits foreclosure by advertisement in certain circumstances. These include situations where the designated person has not negotiated with the borrower as requested, where the parties have independently agreed to a loan modification, and where the statutory calculations show that the borrower qualifies for a loan modification. <u>Id.</u> §§ 600.3204(4)(d)-(f).[7]

The Sixth Circuit, relying on <u>Davenport</u>, held that foreclosure was void <u>ab initio</u> because the lender did not "take the required steps to negotiate a loan modification"

---

[7] The statute was amended on December 22, 2011 addressing certain extra requirements "[f]or a foreclosure proceeding in which the first notice under section 3205a is mailed to the borrower on or after February 1, 2012." <u>Id.</u> § 600.3205. The foreclosure here was complete on November 29, 2011 and the amendment is therefore not applicable.

13

pursuant to Michigan's foreclosure by advertisement statute.  Id. at *3.  The Sixth Circuit reasoned that although the redemption period had expired, the plaintiff maintained an interest in the property and had standing to sue because the violation of the loan modification statute effectively voided the foreclosure and the redemption period never began.  Id.  The court of appeals characterized the defect as a "structural defect" rather than a "notice defect," explaining:

> Mich. Comp. Laws § 600.3204(4) is a statutory prohibition on foreclosure by advertisement where a lender does not take the required steps to negotiate a loan modification.  Although one of the required steps is to provide notice, see Mich. Comp. Laws § 600.3204(4)(a), the failure to comply with the loan-modification process as outlined in the statute is a structural defect because it deprives the borrower of the opportunity to demonstrate eligibility for a loan modification that would avoid foreclosure altogether.  See id. § 600.3204(4)(f). . . It follows that, as a matter of Michigan law, a lender that fails to follow the loan-modification procedures set forth by the statute has engendered a structural defect and is thus without authority to commence a foreclosure.  Without a valid foreclosure, the redemption period has not begun, and the owner of the property retains an interest conferring standing to sue.

Id. at 3.

Nine days after Mitan, the Michigan Supreme Court decided Kim v. JPMorgan Chase Bank, N.A., No. 144690, 2012 Mich. LEXIS 2220 (Mich. Dec. 21, 2012).  In Kim, the Supreme Court found that the defendant bank did not comply with MCL 600.3204 because it foreclosed by advertisement even though it was not the original mortgagee and a record chain of title did not exist.[8]  Notwithstanding, the Supreme Court held that

---

[8] Plaintiffs originally obtained a loan from Washington Mutual Bank (WaMu).  Id. at *1.  After WaMu collapsed in 2008, the FDIC was appointed as receiver and transferred virtually all of WaMu's assets to defendant JPMorgan Chase Bank.  Id. at *2.  Not

the foreclosure was voidable, not void <u>ab initio</u>.  <u>Id.</u> at *22.  Abrogating <u>Davenport</u>, the Supreme Court stated that "<u>Davenport</u>'s holding was contrary to the established precedent of this Court."  <u>Id.</u> at 20.  In order to set aside the foreclosure sale, the Supreme Court stated that "plaintiffs must show that they were prejudiced by defendant's failure to comply with MCL 600.3204.  To demonstrate such prejudice, they must show they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute."  <u>Id.</u>

Because <u>Mitan</u> relied solely on <u>Davenport</u> for its position that a structural defect in foreclosure proceedings voids the foreclosure, <u>Mitan</u> is no longer good law for that point.  A federal court sitting in diversity must apply the law of the state's supreme court.  <u>Tooling, Mfg. & Tech. Ass'n v. Hartford Fire Ins. Co.</u>, 693 F.3d 665, 670 (6th Cir. 2012).  <u>Kim</u> and <u>Mitan</u> reach opposite conclusions and this Court is bound by the Michigan Supreme Court's decision in <u>Kim</u>.

Here, assuming the allegations in the complaint are true, in light of <u>Kim</u>, plaintiff has not stated a claim upon which relief can be granted.  Plaintiff claims that he applied for a meeting with Bank of America because he qualified for a modification of his mortgage.  Even though he claims he qualified for a loan modification, plaintiff says Bank of America never provided him with an in-person meeting or otherwise worked with him to modify the loan.  Further, instead of proceeding with a judicial foreclosure, plaintiff claims defendants impermissibly foreclosed by advertisement, and never conducted statutory calculations that would have shown plaintiff's qualifications for a

---

relevant to this case, the Michigan Supreme Court determined that the transfer of assets was not by "operation of law," and, therefore, no record chain of title existed.  <u>Id.</u> at *17.

loan modification.  Under <u>Kim</u>, the foreclosure by advertisement was voidable. However, as discussed above, plaintiff cannot show fraud or irregularity.  He fails to make an adequate showing that he would have been in a better position to preserve his interest in the property absent defendant's alleged non-compliance with the statute.

In his supplemental brief, plaintiff says that <u>Mitan</u> makes clear that "a lender's failure to properly evaluate a borrower for a loan modification pursuant to Michigan statutes causes prejudice to the borrower because it deprives [him of] the opportunity to avoid foreclosure" (Doc. 14, p. 5).  Plaintiff's argument has no merit.  First, plaintiff makes little more than a conclusory allegation that he would have been in a better position to preserve his interest in the property absent defendant's alleged non-compliance with the loan modification statute.  Second, a breach of the loan modification statute does not preclude the bank from foreclosing.  Rather, it gives the plaintiff an option to convert a foreclosure by advertisement proceeding to a judicial foreclosure.  Mich. Comp. Laws § 600.3205c(6).  Thus, a violation of the loan modification statute, standing alone, is not enough to show fraud or irregularity.

### D.  Loan Modification – Breach of Contract

Count VI alleges that Bank of America breached the unsigned trial loan modification agreement.  Plaintiff says that he entered into an enforceable agreement with Bank of America to modify his loan as long as he timely made three payments required under the trial plan and submitted all documents requested by Bank of America.

The Michigan Statute of Frauds provides that "[a]n action shall not be brought against a financial institution to enforce any of the following promises or commitments

16

of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution: (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation."   Mich. Comp. Laws § 566.132(2).  Here, plaintiff claims that Bank of America breached the trial modification agreement that was not signed by either the Bank or plaintiff.  His claim is expressly precluded by § 566.132(2).

Even if the printed name "BAC Home Loans Servicing, LP" on the bottom of the trial loan modification document satisfies the "authorized signature by the financial institution" exception to the statute of frauds, plaintiff did not have a binding agreement with Bank of America to modify his loan.  See, e.g., Polk v. Countrywide Fin. Corp., No. 12-10648, 2012 WL 2952389 (E.D. Mich. July 19, 2012) (declining to find that a trial loan modification document amounted to an enforceable agreement requiring bank to permanently modify loan) (applying Michigan law).

Even more fundamentally, plaintiff cannot satisfy the necessary elements of a breach of contract claim under Michigan law.  "A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach."  Miller-Davis Co. v. Ahrens Const., Inc. (On Remand), 296 Mich. App. 56 (2012) (citations omitted).  Plaintiff cannot establish a breach of the contract because he did not comply with the terms of the trial loan modification.  By his own admission, his first payment was not timely.  See Doc. 1-2, pp. 45-46 (showing that first payment was not received until October, one

17

month late).

Accordingly, plaintiff cannot maintain a breach of contract action against Bank of America and count VI will be dismissed.

## V.  CONCLUSION

For the reasons above, defendants' motion to dismiss is GRANTED.  This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: January 16, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 16, 2013, by electronic and/or ordinary mail.

S/Sakne Chami
Case Manager, (313) 234-5160

18